No. 26-20283

IN THE

# United States Court of Appeals for the Fifth Circuit

**ALEXANDER E. JONES AND FREE SPEECH SYSTEMS, LLC**
*Appellants,*

## APPELLANTS' OPENING BRIEF

**On Appeal from the Unted States District Court**
**for the Southern District of Texas**
**Cause No. 4:25-CV-05553**

Ben C Broocks
St. Bar No. 03058800
Federal Bar No. 94507
William A. Broocks
St. Bar No. 24107577
Federal Bar No. 3759653
**Broocks Law Firm, PLLC**
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Telephone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
wbroocks@broockslawfirm.com

Shelby A. Jordan
State Bar No. 11016700
Federal Bar No. 2195
Antonio Ortiz
State Bar No. 24074839
Federal Bar No. 1127322
**Jordan & Ortiz, P.C.**
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Telephone: (361) 884-5678
Fax: (361) 888-5555
Email: sjordan@jhwclaw.com
aortiz@jhwclaw.com
copy to: cmadden@jhwclaw.com

Alan B. Daughtry
State Bar No. 00793583
3355 West Alabama, Suite 444
Houston, Texas 77098
Phone: (281) 300-5202
Email: alan@alandaughtry.com

**ATTORNEYS FOR APPELLANTS**

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES .......... iv

REFERENCES .......... 2

CORPORATE DISCLOSURE STATEMENT .......... 3

JURISDICTIONAL STATEMENT .......... 4

STANDARD OF REVIEW .......... 6

STATEMENT REGARDING ORAL ARGUMENT .......... 7

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......... 8

STATEMENT OF THE CASE .......... 9

A. Introduction And Overview .......... 9

B. The Connecticut And Texas Plaintiffs/Appellees Unconstitutional State Court Judgments .......... 12

C. Jones And FSS File Bankruptcy; FSS Dismissed And Assets Conveyed to Jones BK Estate .......... 14

D. BK Trustee Wants To Sell FSS Assets; September 2024 Hearing Birthing Supplemental Order .......... 14

E. Texas Plaintiffs Appeal Supplemental Order; Connecticut Plaintiffs Intervene .......... 24

F. BK Trustee Conducts Auction Bankruptcy Court Rejects And Orders To Try Again .......... 24

G. February 2025 Hearing; Frustrated Bankruptcy Court Rejects BK Trustee To Allow Claims Against Dismissed FSS And Settle .......... 24

H. June 2025 Hearing; Bankruptcy Court Acknowledges Lost Jurisdiction To Modify Supplemental Order .......... 28

I. Texas State Court Receivership Actions Seeking FSS Assets ..........30

J. October Bankruptcy Hearing Resulting In October Order Improperly Repudiating Supplemental Order Which Was Final........30

K. Opinion of District Court In Appeal Of October Order......................33

VI. ARGUMENTS ........................................................................................35

A. The Pivotal Issue In This Appeal Is The Vesting Orders And Specifically, The Supplemental Order ...............................................35

1. This Court Has Confirmed That §349 Most Certainly Effects An Immediate Conveyance ........................................37

2. An Immediate Conveyance And Vesting Of FSS Assets Is Precisely What The Bankruptcy Court Stated It Intended ..........................................................................41

3. The Court's Grant Of Operating Authority Refutes Any Suggestion Of No Transfer Or Of A Transfer Solely That FSS Assets Could Be Sold .....................................................44

B. No Statements Made At the February 2025 Hearing Could Or Did Change The Supplemental Order While Appeal Was Pending ...........................................................................................45

C. After The Appeal Was Dismissed, The Supplemental Order Became A Final Nonappealable Judgment.........................................47

D. There Was No Case Or Controversy Pending Before The Bankruptcy Court When It Issued Its October Order; Advisory Opinions Are Prohibited And The October Order Is Not A Modification Not Interpretation.......................................................48

E. Jones and FSS Both Have Standing to Appeal .................................51

1. Plaintiffs/Appellees Cannot File A Motion Seeking Relief As To Jones and FSS And Then Claim Jones and FSS Cannot Appeal An Adverse Result..................................51

2. Jones's Discharge Has Not Been Determined And Under This Court's Holding In *Mandel*, Jones Thus Has Standing ........ 53

3. FSS Surely Has Standing As The Ownership Of Its Assets Is Squarely At Issue ........ 56

4. *In re Cajun Elec. Power Co-op., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995) Definitively Establishes Standing For Jones and FSS ........ 57

5. Jones's Status as a Member of FSS Does Not Defeat His Standing ........ 61

VII. CONCLUSION AND PRAYER ........ 63

CERTIFICATE OF SERVICE ........ 65

CERTIFICATE OF COMPLIANCE 66

# INDEX OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Hutson*,
114 F.4th 408 (5th Cir. 2024) ........ 49

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) ........ 47, 48

*Britt v. Whitmire*,
956 F.2d 509 (5th Cir. 1992) ........ 4

*Brown v. Chesnut (In re Chesnut)*,
422 F.3d 298 (5th Cir. 2005) ........ 38

*Bullard v. Blue Hills Bank*,
575 U.S. 496 (2015) ........ 4

*Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co. (In re Cajun Elec. Power Coop., Inc.)*,
69 F.3d 746 (5th Cir. 1995) ........ 52, 57, 58, 59

*Dean v. Seidel (In re Dean)*,
18 F.4th 842 (5th Cir. 2021) ........ 6

*Ensley v. Cody Res., Inc.*,
171 F.3d 315 (5th Cir. 1999) ........ 61

*Forrest Gen. Hosp. v. Azar*,
926 F.3d 221 (5th Cir. 2019) ........ 40

*Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*,
493 U.S. 331 (1990) ........ 61

*Furlough v. Cage (In re Technicool Sys., Inc.)*,
896 F.3d 382 (5th Cir. 2018) ........ 6

*Griggs v. Provident Consumer Disc. Co.*,

459 U.S. 56 (1982) .......... 46

*Heslin v. Jones (In re Jones)*,
Adv. No. 23-03035 (Bankr. S.D. Tex.) .......... 53

*In re Baudoin*,
981 F.2d 736 (5th Cir. 1993) .......... 49

*In re Beaulac*,
294 B.R. 815 (B.A.P. 1st Cir. 2003) .......... 54

*In re Foster*,
644 F. App'x 328 (5th Cir. 2016) .......... 54

*In re Jones*,
655 B.R. 884 (Bankr. S.D. Tex. 2023) .......... 53

*In re Mirant Corp.*,
440 F.3d 238 (5th Cir. 2006) .......... 41

*In re Solomon*,
129 F.3d 608 (5th Cir. 1997) (table) .......... 58

*In re TransTexas Gas Corp.*,
303 F.3d 571 (5th Cir. 2002) .......... 47

*Jones v. Heslin*,
No. 03-23-00209-CV, 2026 LX 448607 (Tex. App.—Austin Aug. 21, 2026, no pet. h.) .......... 55

*Kemp v. United States*,
596 U.S. 528 (2022) .......... 48

*Lafferty v. Jones (In re Jones)*,
Adv. No. 23-03037 (Bankr. S.D. Tex.) .......... 53

*Lake v. Cravens*,
488 S.W.3d 867 (Tex. App.—Fort Worth 2016, no pet.) .......... 62

*Liljeberg v. Health Servs. Acquisition Corp.*,

486 U.S. 847 (1988) .......... 48

*Mandel v. Mastrogiovanni Schorsch & Mersky (In re Mandel)*,
641 F. App'x 400 (5th Cir. 2016) .......... 53, 54, 55

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 13

*Pike v. Tex. EMC Mgmt., LLC*,
610 S.W.3d 763 (Tex. 2020) .......... 61, 62

*Pipkins-Thomas v. United States (In re Thomas)*,
223 F. App'x 310 (5th Cir. 2007) .......... 41

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
589 U.S. 35 (2020) .......... 4

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009) .......... 47

*United States v. Fletcher*,
805 F.3d 596 (5th Cir. 2015) .......... 57

*Viegelahn v. Lopez (In re Lopez)*,
897 F.3d 663 (5th Cir. 2018) .......... 34, 38, 39, 40, 41, 60

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
423 F.3d 137 (2d Cir. 2005) .......... 49

**Statutes**

11 U.S.C. § 307 .......... 16

11 U.S.C. § 349 .......... *passim*

11 U.S.C. § 362 .......... 10, 63

11 U.S.C. § 541 .......... *passim*

11 U.S.C. § 721 .......... 8, 33, 36, 44

28 U.S.C. § 158 .......... 4, 5

28 U.S.C. § 1291 .......... 5

28 U.S.C. § 1334 .......... 4

Tex. Bus. Orgs. Code § 101.106(b) .......... 61, 62

**Rules**

Fed. R. App. P. 4(a)(1)(A) .......... 5

Fed. R. App. P. 6(b)(1) .......... 5

Fed. R. App. P. 26.1 .......... 3

Fed. R. Bankr. P. 8002 .......... 4

Fed. R. Bankr. P. 8012 .......... 3

Fed. R. Bankr. P. 8023 .......... 47

Fed. R. Bankr. P. 9023 .......... 4

Fed. R. Bankr. P. 9024 .......... 8, 48

Fed. R. Civ. P. 60 .......... 8, 32, 36, 47, 48, 49

**Other Authorities**

*Black's Law Dictionary* (Bryan A. Garner ed., 10th ed. 2014) .......... 39, 40

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .......... 40

## REFERENCES

Appellants will use the Record on Appeal number that has been assigned to the documents delivered by the Clerk's Office in these underlying appeals by specifying [ROA.XXX].

## CORPORATE DISCLOSURE STATEMENT

Appellants are Alexander E. Jones ("Jones") and his wholly owned company, Free Speech Systems, LLC ("FSS").

Pursuant to Federal Rule of Bankruptcy Procedure 8012 and Federal Rule of Appellate Procedure 26.1, Appellant FSS states that it is a privately held limited liability company with no parent corporation and no publicly held corporation owns 10% or more of its membership interests.

## JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction under 28 U.S.C. § 158(d)(1) and 1334. It entered the Order Confirming that FSS Assets Are Not Subject to the Automatic Stay on October 1, 2025 (the "October Order"). [ROA. 6794]. The October Order finally resolved a discrete dispute over whether specific property is protected by the automatic stay, and it is therefore a final order. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 40–44 (2020); *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501–02 (2015).

On October 8, 2025, within 14 days after entry of the October Order, Appellants moved for reconsideration. [ROA.6845]. A timely motion to alter or amend under Bankruptcy Rule 9023 extends the time to appeal until entry of the order disposing of it. Fed. R. Bankr. P. 8002(b)(1)(B). The motion, titled "Motion for Reconsideration and Rehearing" of the October Order, challenged the correctness of that order. A motion filed within the Rule 9023 period that questions the correctness of an order is treated as a motion to alter or amend, whatever its label. *See Britt v. Whitmire,* 956 F.2d 509, 512 (5th Cir. 1992). The Bankruptcy Court denied the motion on November 4, 2025, [ROA.7023], and Appellants filed their notice of appeal on November 17, 2025, within the 14 days allowed by Bankruptcy Rule 8002(a)(1). [ROA.7025]. The district court had jurisdiction under 28 U.S.C. § 158(a)(1).

On May 15, 2026, the district court entered its memorandum opinion, dismissing FSS's appeal for lack of standing (hereinafter referred to as the "Opinion") [ROA.8010]. That dismissal is a final decision. Appellants filed their notice of appeal on May 22, 2026, within the 30 days allowed by Federal Rule of Appellate Procedure 4(a)(1)(A). *See* Fed. R. App. P. 6(b)(1). [ROA.8025]. This Court has jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291.

## STANDARD OF REVIEW

In reviewing a district court's affirmance of a bankruptcy court decision, this Court applies the same standard of review as the district court, reviewing the bankruptcy court's factual findings for clear error and its legal conclusions and mixed questions of fact and law de novo. *Dean v. Seidel (In re Dean*), 18 F.4th 842, 843-44 (5th Cir. 2021).

Bankruptcy standing is a prudential standing requirement. *In re Dean*, 18 F.4th at 844. The threshold question of standing is reviewed novo. *Furlough v. Cage (In re Technicool Sys., Inc.*), 896 F.3d 382, 385 (5th Cir. 2018).

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that oral argument would greatly assist the Court. This appeal involves complex issues of bankruptcy law and rulings as well as issues arising under the United States Constitution. Given the factual record, the number of issues raised, and the significance of the questions presented regarding a bankruptcy court's authority to alter a final, non-appealable judgment under the guise of "interpreting" it which in reality was a modification, oral argument would assist the Court's consideration of this appeal.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether when the Bankruptcy Court had initially dismissed Free Speech Systems, LLC ("FSS") from Chapter 7 bankruptcy and at that time by orders, ordered pursuant to Section 349(b) that all FSS assets "shall be deemed to have vested in the bankruptcy estate" of FSS's sole member, Alex Jones, as property of the Jones bankruptcy estate "pursuant to Section 541" and ordered that FSS assets were under the control of the trustee of the Jones bankruptcy estate and provided such trustee authority to operate those assets for one year under Section 721, it was error to declare 13 months later that no such transfer had occurred and FSS's assets were never property of the Jones estate.

2. Whether the bankrupt court committed reversible error in modifying a judgment that had become final and non-appealable under the guise of "interpreting" that final order, "interpretation" which effectively negated that final and non-appealable order.

3. Whether the Bankruptcy Court lacked authority to nullify a final, and non-appealable judgment under Rule 60(b)(6) (Bankruptcy Rule 9024).

# STATEMENT OF THE CASE

## A. INTRODUCTION AND OVERVIEW

Alex Jones ("Jones") is a media defendant who has dedicated his life as a political and social commentator broadcasting primarily under his "InfoWars" banner ("InfoWars"), which is the widely recognized media enterprise through which Jones broadcasts his programs, to the millions of people who comprise his audience. Free Speech Systems, LLC ("FSS") owns and has operated InfoWars. Since formation, Jones has been FSS's member and still serves as its sole manager.

This appeal is not about compensating victims -- long before their suit against Jones, they had already received what is reported to be around $75,000,000 from the manufacturer of the gun the murderer used in the Sandy Hook murders. It's about politics and InfoWars.

More specifically this appeal is about efforts of the Plaintiffs/Appellees to seize and operate InfoWars so they can partner with strident, politically-opposed groups to operate Jones's InfoWars program aired to millions of his listeners but with their own opposite political rhetoric. Think KKK taking over the NAACP programs.

Their ability to do this will turn on whether the FSS and its InfoWars assets are in the hands of a bankruptcy trustee supervised by a United States bankruptcy court and the watchdog United States Trustee office, to be fairly sold where friends and foes all have an equal right purchase, or to a state court receiver, to be handled

in a much different fashion. Jones and FSS are vitally interested in how this issue is resolved.

And the resolution of this will turn on the interpretation, effect and continued viability of two orders issued by the bankrtuptcy court, the first in June 2024 and its supplement in September 2024 (together, the "Vesting Orders"), that put FSS and its InfoWars asset into the hands of a bankruptcy trustee under §349(a), declaring them §541 assets of the Jones bankruptcy estate thus protected by §362:

> **ORDER SUPPLEMENTING ORDER DISMISSING CASE**
> **[Related to Docket No. 956]**
>
> 1. Effective as of the entry of the Order Dismissing Case [Docket No. 956] (the "Dismissal Order"), pursuant to Section 349(b), all property of the estate of Debtor Free Speech Systems, LLC ("FSS") shall be deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541 and shall be under the control of the trustee of such estate ("Chapter 7 Trustee").
>
> 2. The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.
>
> Signed: September 25, 2024
>
> Christopher Lopez
> United States Bankruptcy Judge

ROA.7037. The Vesting Orders were appealed to the US District Court when entered and that appeal was later dropped, making them final, non-appealable orders.

However, their viability has been called into question by a third order improperly issued much later (called the "Non-vesting Order" or sometimes called the "October Order") where the same bankruptcy court said that FSS assets had never

become §541 assets of the Jones bankruptcy estate but had only been "deemed" such, not actually such.

On appeal to the Honorable Judge Lee Rosenthal, the District Court said it did not have jurisdiction to hear the appeal as Jones and FSS lacked standing to appeal (the "District Court Opinion" cited to as “Op.__”) [ROA.8010]. While this Court's review is de novo, the District Court is wrong. Jones and FSS do have standing. Further the bankrtuptcy court erred in entering the October Order, which is impossible review in isolation, as it purports to interpret and construe the earlier Vesting Orders.

Given this Court's de novo review even of matters of standing, the District Court Opinion has should have no impact on this Court's de novo review. As the District Court Opinion does raise standing issues, Appellants will address those issues to assist this Court in its de novo review. But will do so at the end of this brief as a detailed review of the facts will better inform this Court in its review of the standing issue.

At the conclusion of this appeal, Appellants believe it will be apparent that

- the June and Supplemental Orders remain in effect;

- FSS assets remain in the Jones bankruptcy estate and are and have been protected by the automatic stay, where the bankruptcy trustee can either sell FSS assets or abandon them.

- The October Order, entered months after the judgments became final and unappealable, is an erroneous and inappropriate attempt at best to

materially modify those judgments and, at worst, to vacate or nullify them altogether.

### B. THE CONNECTICUT AND TEXAS PLAINTIFFS/APPELLEES UNCONSTITUTIONAL STATE COURT JUDGMENTS

Jones as a media defendant, primarily broadcasting under his "InfoWars" banner ("InfoWars") banner has done so through FSS, which company Jones was the sole member of since its formation and still serves as FSS's sole manager. As such he is entitled to the highest form of protection under the First and Fourteenth Amendments of the constitution which forbids state or federal governmental action, including by the judiciaries, that abridge the freedom of the press. U.S. Const. amend. I.

Jones hosted several broadcasts on the highly public murders that took place at Sandy Hook Elementary school in Connecticut. In 2017, years after Sandy Hook tragedy he appeared on NBC's Megyn Kelly show following after which he was sued by fifteen plaintiffs in Connecticut (the "Connecticut Plaintiffs"), two plaintiffs in Texas, Neil Heslin and Scarlett Lewis (the "Texas A Plaintiffs"), and three more Texas plaintiffs (the "Texas B Plaintiffs"). Under iron clad US Supreme Court precedent, unlike a traditional defamation suit, where a media defendant is sued by public figures on comments about matters of public concern, the plaintiffs bear the burden as part of their case to prove the falsity of the broadcast and to prove the legal malice of the broadcaster by clear and convincing evidence. *See New York Times*

*Co. v. Sullivan*, 376 U.S. 254, 271 (1964). Additionally, the Supreme Court mandates that the trial court and every other court who entertains the case, must review the actual transcripts of the broadcasts themselves to ensure, among other things, that the broadcasts were in fact defamatory assertions not opinions. Yet no court in any venue -- no state court, no state court of appeals, no bankruptcy court, no United States District court-- has ever reviewed one single transcript of one single broadcast to determine if any of them pass Constitutional roadblocks that protect media defendants, as the United States Supreme Court has repeatedly mandated. An example that illustrates the importance of this mandate is demonstrated through the transcript of the broadcast that was claimed to be defamatory where, when read in their entirety, Jones unquestionably states that he believes children were killed:

> quite frankly, the father sees, he needs to clarify, NBC needs to clarify because the coroner said none of the parents were allowed to touch the kids or see the kids and maybe they meaning at the school, I'm sure later maybe the parents saw their children. The point is, is that because the media lies so much, you can't blame the public asking questions and you can't

ROA.4567. Disregarding these binding requirements a default against Jones and FSS was entered in Connecticut for three reasons, two of which were for discovery sanctions and the third was for allegedly violating a protective order in seeking to

depose Hillary Clinton.[1] In Texas, one of the stated reasons the trial court entered the default judgment was because one had been issued in Connecticut.

While the claims of the Connecticut and Texas A Plaintiffs were based on the same facts and virtually identical default judgments, On January 12, 2023, a Travis County District Court rendered a judgment awarding Neil Heslin and his former spouse, Scarlett Lewis (the "Texas Plaintiffs"), a total of approximately $49,300,000 against Jones and FSS (the "Texas Judgment"). ROA.489-491. Separately, a state court in Connecticut awarded 15 plaintiffs (the "Connecticut Plaintiffs")[2] a total of approximately $1,400,000,000 against Jones and FSS (the "Connecticut Judgment"). ROA.6599-6616. Both the Texas Judgment and the Connecticut Judgment (the "Judgments") were unconstitutional. The Texas B Plaintiffs have yet to try their cases.

### C. Jones And FSS File Bankruptcy; FSS Dismissed And Assets Conveyed to Jones BK Estate

In the midst of these ongoing proceedings, FSS filed a petition under Subchapter V of Chapter 11. *In re Free Speech Systems, LLC*, No. 22-60043 (Bankr.

[1] Clinton's deposition was sought as one of the Connecticut Plaintiffs could not explain how all 15 Connecticut plaintiffs came to be represented by the same firm and would not [could not?] say how their counsel was being paid. In the motion for out of state commission for a deposition order, the assertions of these points as the basis for Clinton's deposition was deemed to violate a protective order that protected the use of deposition testimony. Particularly as to the last basis, the default judgment involved a penal assessment for acts taken against the state, not an individual.

[2] The Connecticut Plaintiffs refer to themselves as the "Connecticut Families." It is respectfully submitted that the inclusion of FBI Agent Aldenberg as a plaintiff makes the term "Connecticut Families" inaccurate.

S.D. Tex.). Jones filed his own Chapter 11 petition. *In re Jones*, No. 22-33553 (Bankr. S.D. Tex.).

In June 2024, the bankruptcy court converted Jones's case to Chapter 7, and Christopher R. Murray was appointed Chapter 7 Trustee (the "BK Trustee"). ROA.467.

### D. BK TRUSTEE WANTS TO SELL FSS ASSETS; SEPTEMBER 2024 HEARING BIRTHING SUPPLEMENTAL ORDER

On June 21, 2024, the bankrtuptcy of FSS was dismissed, which under ¶349(a) would have automatically re-vested FSS assets in FSS unless the court ordered otherwise, which it did in the June Order vesting FSS assets in the BK Trustee. [ROA.4024]. The Texas A Plaintiffs taking the position that the June Order only affected FSS's cash, immediately sought turnover in Texas state court of the remainder of FSS's assets. [ROA.528]. Annoyed that its order had been misinterpreted and as the bankruptcy court intended to vest all FSS assets in the BK Trustee so they could be sold in an orderly fashion for all creditors (i.e., the Connecticut and Texas Plaintiffs), the Bankruptcy Court ruled that the turnover order conflicted with its order and directed the Trustee not to turn over any funds, stating that he was under no "compulsion to turn anything over or abandon" anything. Op., 3, *citing* Bankruptcy Dkt. 2-7 at 249:19-20, 21-22.At this time the Connecticut and Texas Plaintiffs were very much at odds.

The BK Trustee thereafter filed a motion for bankruptcy court approval to sell the FSS Assets the Jones Chapter 7 Estate held. [ROA.830-886]. Counsel for the BK Trustee explained why the BK Trustee had filed his motion for permission to sell FSS Assets [ROA.942]:

> I hope Your Honor appreciates that part of why we felt the need to come in here and get the order that we're asking for -- and I do think that there's reason under 363 to get this order even though maybe the actual assets we're selling are not property of the Alex Jones estate, part of why we have felt the need to do this is because of….

The US Trustee objected to the BK Trustee for the Jones Estate selling FSS Assets. The UST, a part of the Justice Department, is charged with overseeing the administration of bankruptcy cases, enforcing compliance with the Bankruptcy Code and procedures, and promoting the integrity and efficiency of the bankruptcy system.[3] The DOJ has described it as the "watchdog of the bankruptcy system" who appears from time to time in bankruptcy cases not to advance a private pocketbook interest, but to protect the system from fraud, dishonesty, overreaching, and abuse and to ensure the bankruptcy Code is followed. See 11 USCS §307.

As referenced, the US Trustee filed an objection to the BK Trustee's request for authority to sell FSS Assets. The UST's objection to the BK Trustee's request for authority to sell FSS Assets was as significant as it was simple, asserting that the

[3] See U.S. Tr. Program, U.S. Dep't of Just., https://www.justice.gov/ust & program mission.

BK Trustee could not sell what he did not own. In the opinion of the UST, while the BK Trustee for the Estate may own 100% of the FSS membership interest, this did not translate into ownership of FSS Assets, the UST explaining:[4]

> "... [*the BK Trustee*] can step into the shoes of the 100% member and owner of FSS and exercise all rights given to such owner under state law and FSS's corporate governance documents such as working with employees and a manager on the winddown of the LLC, **but it cannot ask for Bankruptcy Court authority to sell assets it does not have property rights to**." [ROA.949 (emphasis added)]

The UST went on to elaborate that the key issue was whether the FSS Assets were actually property of the Estate under §541(a), writing:

> "Section 541(a) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the debtor's estate, but relevant federal and state law make clear that the legal and equity interest the Jones' estate holds in FSS is the 100% membership interests, rather than its assets " [ROA.896-906].

To address this objection, a hearing occurred on September 24, 2024. ROA.927. As that transcript gave birth to the *Supplemental Vesting Order*, it plays a crucial role in the jurisdictional analysis this Court must perform and must be consulted. The notable speakers are (a) attorney Joshua Wolfshohl, representing the BK Trustee, (b) the BK Trustee (Murray), and (c) attorney Ha Min Nguyen, representing the United States Trustee.

[4] In each of the following quotes, bold and underlined emphasis has been added as have explanatory parentheticals to make clear who and what was being discussed and will not be separately indicated.

After introductory and explanatory comments from Wolfshohl, Murray, and the bankruptcy court, Mr. Wolfshohl, attorney for the BK Trustee explained why the BK Trustee had filed his motion for permission to sell FSS Assets:

> **MR. WOLFSHOHL**: I hope Your Honor appreciates that part of why we felt the need to come in here and get the order that we're asking for -- and I do think that there's reason under 363 to get this order **even though maybe the actual assets we're selling are not property of the Alex Jones estate, part of why we have felt the need to do this is because of** --[ROA.942].

But when Wolfshohl said this, Judge Lopez interrupted, proclaiming FSS Assets were in fact part of the Estate. And when Wolfshohl said they "preferred" that interpretation, again Judge Lopez disagreed, saying it was the law:

> **THE COURT**: **It is property of the Alex Jones estate**, because Alex Jones owned the equity interest in FSS. 541, **all legal or equitable interests. All. And all has got to mean all**.
>
> **MR. WOLFSHOHL**: Okay. And I prefer that interpretation.
>
> **THE COURT**: No, no, it's not my interpretation. It's Congress. Congress used the word all. **All legal and equitable interests of the debtor become property of the estate. All means all. And we can't shortchange what all means**. And -- and upon conversion [*i.e. under §349*] unless otherwise ordered.... **And all has got to mean all. And we don't get to kind of pick and choose what all means.** I just -- I am just calling it like I see it.... I'm just a little confused about what we're doing here today. [ROA.942-43].

Wolfshohl then explained that the turnover order the Texas Plaintiffs had sought after the *June Order* was a driving force requiring the bankruptcy court to be clear to which the court emphasized the *June Order* had already done that:

> **MR. WOLFSHOHL**: Well, Your Honor, a turnover order is the reason we feel like we need the protection of your additional order. Yeah.

> **THE COURT**: I know what you're asking. I understand what you're asking me for today. **But what I'm saying is it's already there. What you're asking for is belt and suspenders. Let's not act like it's not already there.....** I understand the concerns today and I understand the need to be clear. I understand what you're asking for. **But what you're asking me for really is belt and suspenders**. [ROA.943-44].

Having engaged with the BK Trustee's counsel, the bankruptcy court then turned to the attorney for the United States Trustee, Mr. Nguyen who explained the UST's objection [ROA.949]

> But we filed this objection to the winddown motion particularly because of our reading of the statute and our understanding. I know Your Honor says under 541 all means all. But there are basic tenets of American corporation laws that the U.S. Supreme Court has said that -- you know, just because you own a hundred percent of the equity, you don't own a hundred -- the estate itself doesn't own the assets.

To this, the court responded offering to amend the *June Order* to reflect what everyone, but the UST understood [ROA.949-50]:

> THE COURT: Is it easier if I just amended my order? Because everybody knows that's what I intended to do. Would it just make it easier for you if I just amended the order?
>
> MR. NGUYEN: That would be, Your Honor. Under 349 if you bring those assets in. But it's a little bit --

So emphatic was the bankruptcy court that Judge Lopez again interrupted to make it abundantly clear that the *June Order* had conveyed FSS Assets [ROA.950]:

> **THE COURT: That was always the intent. Right?** And we can disagree about that. **But I'm just saying that was always the intent. Everybody knew**. Everybody understood that at the time. If that wasn't clear or -- no one raised it to me then when winddown was being discussed. **If you want me to do that, I am more than happy** -- because it sounds like everybody needs it anyway -- **I'm more than happy to clarify in my order that all the assets -- if it didn't include it in the assets, that's why he has the cash, right**? That's why he's got the cash and that's why he's got the equity interest. He's got everything. **That was always the intent as to what was going on**. But if that makes this easy, I'm happy to do it. Because I think you and I actually agree a lot here. **I just think we're getting in the technicalities here. But that certainly was what I ordered at the time**.

The US Attorney reacted to the suggestion that alteration to the *June Order* was not in his mind, a "technicality" stating [ROA.950]:

> MR. NGUYEN: Your Honor, it's not the technicality. It's actually what the Code says.

Attempting to obviate bickering the bankruptcy court again offered to supplement the *June Order* to make his intentions clear that in the *June Order* the court had always intended to bring FSS Assets in as Code §541 assets of the Estate by means of Code §349, the court stating [ROA.951-52]:

> **THE COURT: ...**I'm just saying I'm happy to do it. And. no one is going to dispute it. I'm happy to do it. If that makes everybody's life happier, I'm happy to do it.

> **MR. NGUYEN:** It would make things easier, Your Honor. But it's a little bit unusual to dismiss a case but retain all of the assets with –

Thereafter, the bankruptcy court entered Supplemental Order which by its terms supplemented the June Order, making it clear that it has intended that all FSS assets be deemed vested in the BK Trustee under §349(a) as §541 assets of the estate bankrtuptcy estate of Jones. Code Section 349 reads:

> ## § 349. Effect of dismissal
>
> ***
>
> **((b)** Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title [11 USCS § 742]—
>
> ***
>
> **(3)** revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title

The only way FSS's assets could be deemed to have vested in the Estate is if the vesting determination was made at the time of the dismissal of FSS bankruptcy, i.e. June 2024. And that fact explains the bankruptcy court's continual emphasis that he *intended* to accomplish the vesting in the *June Order*, i.e., ***at dismissal of the FSS bankruptcy***. The court knew that unless it was done in the *June Order*, FSS Assets would have re-vested in FSS, and it would be impossible for the bankruptcy court to later reach back out for them, whether in September 2024 or for that matter June 2025. This reality explains why the bankruptcy court then quoted the language of Code §349 stating [ROA.951]

> **THE COURT**: **<u>Unless otherwise ordered by the Court</u>**. We don't have to get into what's unusual or not. Everything is case specific. That's why the -- I think that's why Congress gave everyone flexibility....
>
> **MR. NGUYEN:** Your Honor, I understand amending the order. And I think it would be very helpful in terms of actually clarifying what Mr. Murray has the actual --
>
> **THE COURT**: No, no, I understand that. And I think my statements were a little different. **<u>But I think clarifying on the record</u>** -- I don't think anybody is going to...

Then in his concluding remarks, counsel for the UST summarized the need for an order making it completely clear that in June, by virtue of the *June Order*, title to FSS Assets had been vested in the Estate as §541 assets under §349, stating [ROA.952]:

```
          MR. NGUYEN:  Your Honor, if you clarify the order
to include all of FSS hard assets as property of the estate,
the U.S. Trustee won't have any objection.  I think you are
able -- you have discretion under 349 to order otherwise.
As long as that order is clear, we're fine with that.
```

Turning again to Wolfshohl, counsel for the BK Trustee, the Court confirmed its intention was to give the BK Trustee all FSS Assets when it signed the *June Order* and wanted a new order simply to "*<u>clarify</u>*" his intentions that the BK Trustee had all FSS Assets under the *June Order* [ROA.952-53]:

> **THE COURT**: Mr. Wolfshohl, what about that?... **<u>I'm going to give you [*i.e., the BK Trustee whom Wolfshohl represents*] all the assets of FSS. I'm going</u>**

> **to clarify that that's what you [i.*e. the BK Trustee*] always had, the assets of FSS. And I just want to make sure that other people look at it so that no one then -- I sign something and then somebody comes in and asks me to reamend the order**...[5]
>
> **MR. WOLFSHOHL:** ... you're talking about amending the dismissal order, [i.*e., the June Order*] to clarify that? That would help -- I think it would help.

And following this the court again makes clear that the order that will follow --the Supplemental Order -- is not a *new* order but an order *clarifying* the *June Order* [ROA.953]:

> **THE COURT**: ... **And I feel like it's a clarifying order. It's not really amending the order** [i.*e. the June Order*]. Well, it's more -- I don't want to come up with bankruptcy terms for orders, but you know what I mean. It's more of a -- whether you can call it -- you can call it -- **I don't care what you call it. You can call it amended order or modified order, a clarifying order**.
>
> **MR. WOLFSHOHL**: An order in furtherance.

There can be no question from this background that the bankruptcy court intended the *June Order* to actually convey FSS Assets to the BK Trustee pursuant to Code §349 so that they became Code §541 assets of the Estate at that time, and the Supplemental Order simply "clarified" what always intended when the *June Order* was entered.

---

[5] As will be addressed shortly, the October 2025 events were an attempt to come in after the fact and do precisely what the court said it did not want to happen.

The resulting Supplemental Order [ROA.7037] that followed makes clear it merely confirms the *June Order* and even makes it retroactive to the date the *June Order* was signed. It also confirms the court exercised its discretion to vest all FSS property Code §541 property of the Estate pursuant to Code §349(b),

While the BK Trustee owned Jones's FSS equity, Jones was still the manager of FSS. The Supplemental Order further gave the BK Trustee authority to operate FSS assets for one year, which he did by working out an income sharing arrangement with Jones where Jones would operating FSS as manager under the BK Trustee's supervision. Throughout both Chapter 11 cases, Jones continued to manage FSS, and FSS continued to operate the Infowars broadcast business. Since that time the BK Trustee's attorneys have billed and been millions of dollars, the majority of those funds coming from Jones's continued operation of FSS.

### E. TEXAS PLAINTIFFS APPEAL SUPPLEMENTAL ORDER; CONNECTICUT PLAINTIFFS INTERVENE.

The Texas Plaintiffs immediately appealed the *Supplemental Order*[6] identifying the appellate issue as the propriety of "retroactively" vesting FSS Assets in the Jones Chapter 7 Estate:

[6] That appeal remained in effect until a Stipulation of Dismissal was filed on May 6, 2025. United States District Court Case No. 24-cv-03882 Dkt. No. 22. Because the appeal was dismissed, the propriety of the *Supplemental Order* or a retroactive conveyance, as the Texas Plaintiffs put it, cannot be challenged, directly or collaterally.

**STATEMENT OF ISSUES**

1. Did the Bankruptcy Court err when, without notice, it entered an order [Docket No. 1021]—three months after dismissing the Free Speech Systems, LLC bankruptcy [Docket No. 956]—that retroactively vested all property of former debtor Free Speech Systems, LLC into the bankruptcy estate of Alex Jones?

The filing of this appeal immediately divested the bankruptcy court of any jurisdiction to alter, amend or modify the *Supplemental Vesting Order*. *See, In re Transtexas Gas Corp. v. TransTexas Gas*, 303 F.3d 571, 579 (5th Cir. 2002).

The Connecticut Plaintiffs intervened in support of the order, telling the district court that it "clarified that as of the entry of the original dismissal order, all property of FSS was deemed to have vested in the bankruptcy estate of its 100 percent owner, Alex Jones, as property of that estate." [].

### F. BK TRUSTEE CONDUCTS AUCTION BANKRUPTCY COURT REJECTS AND ORDERS TO TRY AGAIN.

With ownership of FSS's assets the trustee acting in conjunction with the Plaintiffs, decided to conduct an auction of most of FSS's assets, one of which was InfoWars. They attempted to manipulate the auction procedure in order to throw the auction sale to a left-wing, ultra-liberal magazine called the Onion. The Onion, working with the Plaintiffs, expressed the intention to acquire Jones's InfoWars, including its list of subscribers and viewers/listeners, and without notice begin to use InfoWars to publish satirical commentary intended initially to confuse Jones's

listeners and ultimately destroy Jones's very message. It would have been as if the KKK levied on a judgment against the NAACP or a group of atheists took over a church or synagogue -- ideologically polar opposites -- and began to use the opposition entity for its own ideological purposes. For a variety of reasons, the bankruptcy court refused to approve the sale, given the financial gimmickry the Plaintiffs/Appellees attempted.

### G. February 2025 Hearing; Frustrated Bankruptcy Court Rejects BK Trustee To Allow Claims Against Dismissed FSS And Settle

At the conclusion of the bankruptcy court's rejection of the BK Trustee's failed efforts at a collusive, rigged bid for FSS assets in December 2024, the bankruptcy court in frustration stated it wanted FSS assets sold -- no more games. The court reiterated what it had said in December in the next hearing that occurred in February 2025 [ROA.3370]:

> So the sale didn't happen, and I said, I don't want any more contingencies. If there's going to be a sale of assets, then cash will be king. But if there's confu- -- if there's -- gets complicated, like it was last time, where you had IP assets, and people weren't bidding against each other.

The February 2025 hearing was precipitated by the BK Trustee's new Motion, however there was no sale to approve, but rather a bogus settlement among the BK

Trustee and Plaintiffs/Appellees, which was untenable for a host of reasons as the bankruptcy court explained in February:

> So, now the Trustee is asking me to approve a 9019 settlement where I'm allowing over $400 million of claims against Free Speech. And now the Texas families are saying that the matter that they very much appealed, they're now embracing. The supplemental order is now embraced.
>
> The Trustee who asked me for a specific order for a specific purpose is now using that order. But it was only for one purpose, to see if he could sell the assets. To now use those words, knowing what we did and why we did it, and everybody was in the room when we did it. Ha Nguyen was here. The U.S. Trustee was sitting right there telling me.
>
> So, now it's going to be expanded to then allow $480 million worth of claims against an entity in a case that I dismissed. I'm being asked to allow claims -- allow -- and allow is bankruptcy buzzword 101.

ROA.3373. The court was saying it gave the Trustee the Supplemental Order to sell FSS assets and it had instead been used to effect a bogus settlement that contemplated "allowing" over $400 million in bankruptcy claims against FSS, in favor of the three Texas B Plaintiffs who had yet to even try their cases. As FSS had been dismissed from bankruptcy, the court had no way of "allowing" such claims.

As the bankruptcy court concluded that February Hearing, it expressed its concerns that the BK Trustee and Plaintiffs /Appellees were misusing the Supplemental Order. That court did not say the Supplemental Order was null and void, but any future use was null and void [ROA.3375](emphasis added):

> No, you don't have to say anything. I know what the rights are. And I'm not -- so you can consider any use of the supplemental order null and void, because the purpose for which it served was the auction of the assets, and we're not doing that anymore. I don't trust the process. I would have to do it -- me, myself -- and I'm not overseeing it.

The court made clear its reasoning was because "the purpose for which it served was **<u>the auction of the assets</u>**, and we're not doing that anymore," the court referring to future auctions. The court added that it was "very much inclined to vacate that order because it serves no purpose." [ROA.3374]. But in that same hearing, the court immediately qualified the remark, recognizing that the Texas A Plaintiffs' appeal of the Supplemental Order was then pending, that it therefore "los[t] jurisdiction over that immediately," and that it lacked "authority to go vest the property of the estate." [ROA.3440]. The court went on to clarify that it was not purporting to vacate the Supplemental Order outright but only declining to let it "be used ... for a purpose in which it was never intended," while it "retain[ed] jurisdiction" to construe its own prior orders. [ROA.3447]. Consistent with that limitation, the court's only operative

ruling that day was to deny the motion to approve the proposed settlement; no order vacating, modifying, or nullifying the Supplemental Order was ever entered..[7]

### H. June 2025 Hearing; Bankruptcy Court Acknowledges Lost Jurisdiction To Modify Supplemental Order.

At the next hearing in June 2025, the bankruptcy court acknowledged that it had lost jurisdiction to change the Supplemental Order in February 2025 when the Texas A Plaintiffs appealed the Supplemental Order. The court did make clear that it was considering the terms on which a future sale could occur-- a physical impossibility if the Supplemental Order regarding §349 vesting of FSS assets in the Jones BK Estate had suddenly evaporated in February 2025 [ROA.3521]:

[7] The District Court in dicta stated "After the auction fell through, the Bankruptcy Court abandoned its goal of allowing Murray to resolve Jones's bankruptcy case in part through selling Free Speech Systems' assets." Op.4. This is wrong. To the contrary, had the court's reaction in February 2025 been due to the failed auction on December 10, 2024, auction, the court would not have thereafter told the BK Trustee to continue its sales efforts and there would have been no reason to wait until February 2025 to express sentiments prompted by events over two months prior.

somebody wants to buy the equity, which someone can always do in Chapter 7. I read your pleadings and I think -- I went back and listened to it, and I'll take the blame for not being incredibly as precise as I should have been.

The matter was currently pending. That order was currently pending on appeal at the time, so I couldn't revoke one way or the other, right? Once bankruptcy, once an appeal is filed, the Court loses jurisdiction over that.

*****

Trustee is going to have to think about whether I approve any sale process because it would have to be conducted by me. It would have to be cash only and we'd have to sort out all the intellectual property issues. So I don't want someone buying something -- and I expressed this a while back -- and then showing up six months later in state court and someone suing them because they really didn't own something that I sold and so I haven't revoked anything. I didn't have authority to do it anyway, but to me, putting up another auction process would be incredibly complicated, incredibly

Notably, the sentiment for how a future sale would occur was voiced with the court indicating that it itself would have to be conducted by the court itself as in February, as quoted above, it had said there would not be another **auction, not that there would be no further sales efforts of FSS assets.** [8] There would have been

[8] Again in dicta, the District Court selectively quotes the transcript of the June Hearing as follows: "And in June 2025, the Bankruptcy Court stated again that its February and March rulings were in effect, explaining that there was 'nothing for [it] to reconsider' and that its 'position' had not "changed in terms of what [it] said in February.'" OP. 4-5. The District Court's quote makes it sound like a repudiation of the Supplemental Order occurred in February and the bankrtuptcy court was saying that had not changed in June, which is not at all what was said or being communicated.

no basis in law or fact to be considering the mechanics of a future sale of FSS assets if they had somehow been re-conveyed to FSS whose bankruptcy had been dismissed months prior.

## I. TEXAS STATE COURT RECEIVERSHIP ACTIONS SEEKING FSS ASSETS

While the Plaintiffs/Appellees had very much been at odds, after June 2025, they reached some sort of partnership -- they have announced their partnership but never disclosed its terms -- and began joint collection actions in Texas state court on FSS assets contending that the comments of the bankrtuptcy court in the February 25 Hearing, voided the Vesting Orders. They contended that as a result of the February 25 Hearing, FSS assets had somehow been re-transferred to FSS and were thus free from the automatic stay. Notwithstanding their claim the Vesting Orders were void and of no effect, Plaintiffs/Appellees presented to the state court a form of turnover order that the state court signed, that itself acknowledged (a) the Vesting Orders, (b) the Vesting Orders conveyed FSS assets to the BK Trustee, and (c) the Vesting

What the bankruptcy court actually said was "I think everyone should leave on the motion for reconsideration thinking, well, there's really technically nothing for me to reconsider **because there's nothing, I haven't done anything**. But I don't think my position has changed in terms of what I said in February" (emphasis added) [ROA.3547-48]. Oddly the District Court's quote omitted the phrase "I haven't done anything." Further the District Court does not mention the bankruptcy court's statements about considering a future sale of FSS assets that the court itself would have to conduct given that there would be no more auctions. Had the BK Trustee not still had FSS assets there could be no more consideration of a sale.

Orders were still in place. The relevant portion of that turnover order Plaintiffs/Appellees presented and the trial court signed, read as follows:

> The Court also FINDS that Judgment Debtor Free Speech Systems, LLC filed for bankruptcy under chapter 11 of the Bankruptcy Code on July 29, 2022 (the FSS Petition Date) in the Bankruptcy Court as case no. 22-60043 (the FSS Bankruptcy Case). Following a hearing on June 14, 2024, the Bankruptcy Court issued two orders in the FFS Bankruptcy Case dismissing the FFS Bankruptcy Case and vesting authority in the Trustee to take control of Judgment Debtor Free Speech Systems, LLC, including its assets and bank accounts. *See* Dkt. 956 (June 21, 2024) and Dkt. 1021 (September 25, 2024), No. 22-60043 (Bankr. S.D. Tex.). Accordingly, the Application only seeks relief relating to the following (cumulatively, the Turnover Property):
>
> (i) as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only to approval of the Trustee).

[ROA.3759]. Jones and FSS pointed out to the Texas state court the order it was presented references that the Vesting Orders were still in effect and thus still protected by the automatic stay, and that as a result under Texas law this made its turnover order void. While the trial court nevertheless signed the void turnover order, the confusion they themselves created with inconsistent positions prompted the Plaintiffs/Appellees to file a joint motion with the bankruptcy court one day after the expiration of the one year period beyond which not even FRCP 60 relief could be granted, seeking the bankruptcy court's help.

### J. OCTOBER BANKRUPTCY HEARING RESULTING IN OCTOBER ORDER IMPROPERLY REPUDIATING SUPPLEMENTAL ORDER WHICH WAS FINAL

Vexed by problems of their own creation, Plaintiffs/Appellees filed a motion in the bankruptcy court seeking advisory opinions ("October Motion").[9] [ROA.003553]. That Motion repeatedly referenced, directly and indirectly, that the Supplemental Order did in fact convey FSS assets but clung to the bankruptcy court's statements in the February hearing as rendering that conveyance "null and void." *See, e.g.*, ROA.3556, ¶7 ("Although this Court previously entered the Supplemental Dismissal Order, which ordered that FSS's assets would 'be deemed to have vested in the [Debtor's] bankruptcy estate,' it subsequently ordered that such order was 'null and void.'"). Their acknowledgement that FSS assets were transferred echoes what the Texas A Plaintiffs stated to the District Court as their basis for appealing the Supplemental Order:[10]

> 14. On September 25, 2024, the Bankruptcy Court entered the Supplemental Dismissal Order on the FSS docket. (Bankr. Dkt. 1021). This Supplemental Dismissal Order clarified that as of the entry of the original Dismissal Order, all property of FSS was deemed to have vested in the bankruptcy estate of its 100% equity owner, Alex Jones, as property of that estate under the control of the Chapter 7 Trustee. *Id.*

---

[9] Plaintiffs' filed the Motion herein called the "October Motion" on September 26, 2025. Because of the plethora of motions, transcripts of hearings on motions, and resulting orders, the term "October Motion" is used purely for convenience to attempt to avoid further confusion.

[10] Texas Plaintiffs' Notice of Appeal of the Supplemental Order and Statement of Issues on Appeal are found respectively at BK Dkt. 1029 and BK Dkt. 1033, BK Case No. 22-60043.

ROA.7798. The Connecticut Plaintiffs had agreed with this position in their intervention in that appeal.[11]

Their Motion repeatedly claimed that Jones and FSS positions taken in the state trial and appellate courts that the Supplemental Order had continued viability, "have sown chaos and confusion regarding" the continued viability of the Supplemental Order [ROA.7545] and was creating " ongoing confusion and the inequitable use of a void order to frustrate lawful state-court enforcement efforts" [ROA.7562]. Appellees proclaimed that relief against Jones and FSS was "necessary because Jones and FSS have repeatedly told Texas state courts that FSS's assets are property of the Debtor's chapter 7 estate (the "Chapter 7 Estate"), [and] that the Order Supplementing Order Dismissing Case remains operative ..." [ROA.003553]. Their Motion was directed at Jones and FSS, who responded and attended and participated in the hearing embodied in the October Transcript. ROA.006797.

Their Motion asked the bankruptcy court to (a) "interpret" its Supplemental Order as null and void [ROA.003567-68 [¶¶43-45] and (b) alternatively if still effective, to grant them relief under FRCP 60(b)(6) solely on the grounds that in

[11] ROA.7798.

February 2025 the bankruptcy court declared the Supplemental Order null and void, Appellees writing in their Motion:

Case 22-33553 Document 1241 Filed in TXSB on 09/26/25 Page 18 of 21

48. This case presents exactly the kind of extraordinary circumstances that Rule 60(b)(6) was designed to address. The Supplemental Dismissal Order was expressly entered to give the Chapter 7 Trustee authority to sell the assets of FSS. The Court has since stated, both on the record and in subsequent rulings, that the Supplemental Dismissal Order is "null and void" because the contemplated sale of such assets will not occur pursuant to a Bankruptcy Court process. *See* Hr'g. Tr. 14:13–16, 14:22–24, Feb. 5, 2025.

ROA.3570. Their Motion concluded with a prayer, asking that the bankruptcy court enter an order "reconfirming that the Supplemental Dismissal Order has no force or effect" as a result of which "FSS's assets are not property of the Chapter 7 Estate" and because FSS assets were not property of the Jones Bankruptcy Estate, "any automatic stay applicable in the Jones Bankruptcy Case does not apply to FSS or its assets." [ROA.3571].

A hearing ensued, the transcript of which is referred to as "October Transcript" [ROA.006797] at which to the surprise of all in attendance, the bankruptcy court never addressed the on-going validity or viability of the Supplemental Order or the impact thereon of any statements allegedly made by the

bankruptcy court in its February Hearing, but rather stated that it had never judicially conveyed FSS assets to the Jones BK Estate, but merely only "deemed" them conveyed. [ROA.6803]. As a fallback position, the bankruptcy court said the Supplemental Order's additional permission for the BK Trustee to operate FSS assets for one year under §721, somehow meant any judicial conveyance had only been for one year. [ROA.6809].

Immediately following the bankruptcy court issued the October Order stating in part: "For the reasons stated on the record..." referring to the October Transcript. [ROA.006794.]. Denying the motion to reconsider filed by Jones and FSS, this appeal ensued

### K. Opinion of District Court In Appeal Of October Order

Jones and FSS appealed to the United States District Court. In their Response Brief, Plainrtiffs/Appellees jettisoned their prior positions and instead claimed the Supplemental Order did not transfer FSS assets, but only "deemed" them to have vested:

> "The Supplemental Dismissal Order similarly did not transfer the FSS Assets into the Jones Estate.... Critically, the Supplemental Dismissal Order did not actually transfer or vest any FSS Assets in the Jones Estate; it only 'deemed' them to have vested for the limited purpose of enabling a sale process and giving the United States Trustee comfort that the Chapter 7 Trustee could sell the FSS Assets and not just the equity in FSS." ROA.7406.

This positional sea-change is a transparent "Hail Mary" that not only contradicts what they have continuously asserted in filing after filing, it contradicts

what the Fifth Circuit has explained is the function of 11 USC §349 in *In re Lopez*, 897 F.3d 663, 669 (5th Cir. 2018), analyzed infra.

# VI.
# ARGUMENTS

## A. THE PIVOTAL ISSUE IN THIS APPEAL IS THE VESTING ORDERS AND SPECIFICALLY, THE SUPPLEMENTAL ORDER

The pivotal issue that should determine the outcome of this appeal is the meaning of the Vesting Orders and their continuing viability. Resolution of these questions is made challenging for two reasons.

Plaintiffs/Appellees' original position which they had consistently urged until October 2025, was that the Vesting Orders were indeed valid and did indeed convey FSS assets to the Jones bankruptcy estate, but the bankruptcy court declared them "null and void" in the February Hearing. *See, e.g.*, ROA.3556, ¶7 ("Although this Court previously entered the Supplemental Dismissal Order, which ordered that FSS's assets would 'be deemed to have vested in the [Debtor's] bankruptcy estate,' it subsequently ordered that such order was 'null and void.'"). Indeed, that was the basis on which they appealed the issuance of the Supplemental Order to the District Court immediately after it was entered. ROA.7612. The Connecticut Plaintiffs had agreed in their intervention in that appeal that FSS's assets had been judicially conveyed via §349. ROA.7798. Both of these points are discussed *supra*.

This position was further repeated in their October Motion where they asked the bankruptcy court to (a) interpret its Supplemental Order as null and void [ROA.3567-68 [¶¶43-45] and (b) alternatively if the Supplemental Order was still

effective, to grant them relief under FRCP 60(b)(6) solely on the grounds that in February 2025 the bankruptcy court declared the Supplemental Order null and void. ROA.003570. Their October Motion concluded with a prayer, asking that the bankruptcy court enter an order "reconfirming that the Supplemental Dismissal Order has no force or effect" as a result of which "FSS's assets are not property of the Chapter 7 Estate" and because FSS assets were not property of the Jones Bankruptcy Estate, any automatic stay applicable in the Jones Bankruptcy Case does not apply to FSS or its assets." [ROA.7562].

On the other hand, in the October proceedings, the bankruptcy court stated that it had never judicially conveyed FSS assets to the Jones BK Estate, but merely "deemed" them conveyed. [ROA.6803]. As a fallback position, the bankruptcy court said the Supplemental Order's additional permission for the BK Trustee to operate FSS assets for one year under §721, somehow meant any judicial conveyance had only been for one year. [ROA.6898].

In their appellate briefing to the District Court, Plaintiffs/Appellees jettisoned their original positions and instead embraced the bankruptcy court's October position, claiming on appeal the Supplemental Order did not transfer FSS assets, but only "deemed" them to have vested:

> "The Supplemental Dismissal Order similarly did not transfer the FSS Assets into the Jones Estate.... Critically, the Supplemental Dismissal Order did not actually transfer or vest any FSS Assets in the Jones Estate; it only 'deemed' them to have vested for the limited purpose of enabling a sale process and

> giving the United States Trustee comfort that the Chapter 7 Trustee could sell the FSS Assets and not just the equity in FSS." ROA.7406.

Neither position is correct.

### 1. *This Court Has Confirmed That §349 Most Certainly Effects An Immediate Conveyance*

The Plaintiffs/Appellees were correct in their first position that FSS assets were conveyed to the Jones Bankruptcy Trustee but wrong in urging the February Hearing declared it null and void.

The bankruptcy court erred in the October Proceedings asserting that they were never conveyed. It is first important to reiterate what the Supplemental Order says:

> **ORDER SUPPLEMENTING ORDER DISMISSING CASE**
> **[Related to Docket No. 956]**
>
> 1. Effective as of the entry of the Order Dismissing Case [Docket No. 956] (the "Dismissal Order"), pursuant to Section 349(b), all property of the estate of Debtor Free Speech Systems, LLC ("FSS") shall be deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541 and shall be under the control of the trustee of such estate ("Chapter 7 Trustee").
>
> 2. The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.
>
> Signed: September 25, 2024
>
> Christopher M. Lopez
> Christopher Lopez
> United States Bankruptcy Judge

ROA.7037. In this order, the Bankruptcy Court expressly referenced it was acting pursuant to §349 which reads:

## § 349. Effect of dismissal

***

((b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title [11 USCS § 742]—

***

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title

The operative event here is not §349 alone but also §541 alone. Section 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). This Court has repeatedly emphasized the breadth of §541: "Congress intended a broad range of property to be included in the estate." *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005). The effect of this order was to make FSS assets §541 assets of the Jones Estate. The express reference that FSS assets are §541 assets of the Jones Estate makes the bankruptcy court's comments in the October Proceedings that they were not §541 assets surprising and impossible to reconcile. [ROA.6806-07].

In *Viegelahn v. Lopez (In re Lopez),* 897 F.3d 663, 669 (5th Cir. 2018), this Court squarely explained the meaning and function of 11 USC §349. *In re Lopez* involved a debtor/family's homestead property that had been sold while their bankruptcy was pending. The family wanted some of the proceeds of sale for surgery. The bankruptcy court stated that if the family/debtor dismissed their bankruptcy filing they could have all the proceeds, but would not get a discharge,

which the family/debtor did over the protest of the bankruptcy trustee. The district court reversed the holding of the bankruptcy court and agreed with the bankruptcy trustee that even though the family/debtor had dismissed their filing, the bankruptcy trustee should nevertheless receive all sale proceeds for distribution to creditors. This Court reversed the district court and proceeded with a detailed analysis of §349, focusing on the terms "vest" and "revest." After quoting §349, this Court defined those terms using Black's Law Dictionary as follows:

> Black's Law Dictionary defines "vest" to mean, in relevant part: "[t]o confer ownership (of property) on a person"; "[t]o invest (a person) with the full title to property"; or "[t]o give (a person) an immediate, fixed right of present or future enjoyment." VEST, Black's Law Dictionary (Bryan A. Garner ed., 10th ed. 2014). To "revest" means "[t]o clothe or vest again or anew, as with rank, authority, or ownership." REVEST, Black's Law Dictionary. Thus, the ordinary meanings of both "vest" and "revest" are broad.

897 F.3d at 669. The Court went on to explain that upon dismissal of a bankruptcy filing, a court's choices are essentially binary. As applied here, when a debtor, such as FSS is dismissed from bankruptcy, its "vested" assets "revested" in the debtor, unless ordered otherwise. Given this Court's explained meaning of the term "vest" it is clear there is no statutory room for partial, vesting/revesting, or conditional vesting/revesting.

As to the bankruptcy court's suggestion that interpreting the phrase "deemed" to have a limiting meaning, especially when used with the expansive definition of the term "vest," negates the very meaning of "vest." Further, the term “deemed” is

not a hedging word; it is used to declare a legal status/effect. The Supplemental Order did not merely "deem" in the abstract—it directed the practical consequence that FSS Assets "shall be under the control of the trustee."

As this Court explained, "A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored." *In re Lopez*, 897 F.3d at 669–70 (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 63 (2012)).

In actually defining the term "deemed," the Fifth Circuit has again referred to Black's Law dictionary stating its meaningq:

> "1) To treat something as if (a) it were really something else, or (b) it has qualities that it does not have (although the document was not in fact signed until April 21, it explicitly states that it must be deemed to have been signed on April 14) (2) to consider, think, or judge (she deemed it necessary). 'Deem' has been traditionally, considered to be a useful word when it is necessary to establish a legal fiction of positively by 'deeming' something to be what it is not or negatively by deeming something not to be what it is….."

*Forrest Gen. Hosp. v. Azar,* 926 F.3d 221, 231 n.61 (5th Cir. 2019). This definition of "deemed" when coupled with this Court's analysis of §349 and its terms, simply means the Supplemental Order "deemed" ownership of FSS's assets to have been judicially transferred, as opposed to a transfer by means of a bill of sale, gift, or other traditional mechanism of transfer.

Once vested in the estate under §349(b), FSS assets became §541 "property of the estate" by operation of law and no further judicial action was required. *See In*

*re Mirant Corp.*, 440 F.3d 238, 248 (5th Cir. 2006) ("Property becomes property of the estate upon the filing of the petition and remains so unless abandoned or otherwise removed from the estate."). There is no statutory mechanism allowing the Bankruptcy Court to later "undo" that vesting.

2. *AN IMMEDIATE CONVEYANCE AND VESTING OF FSS ASSETS IS PRECISELY WHAT THE BANKRUPTCY COURT STATED IT INTENDED*

The genesis of the Supplemental Order gives further iron-clad proof that an immediate conveyance was what the bankruptcy court intended and has been set forth in detail *supra* which is incorporated herein by reference. In short, the BK Trustee wanted to conduct an auction of FSS Assets and filed a motion for permission to do so. ROA.830-886. The Office of the US Trustee objected. Its position was simple: the BK Trustee cannot sell what he does not own.

This objection resulted in the hearing on September 24, 2024. [ROA.927]. At that hearing, the bankruptcy court made clear that the June Order had already brought the FSS assets into the Jones Chapter 7 Estate under Code §§ 349(b) and 541, that conveying all FSS Assets "was always the intent," and that the order the BK Trustee requested was merely "belt and suspenders." [ROA.944]. Counsel for the US Trustee confirmed that clarifying the order on that basis would resolve the US Trustee's objection. [ROA.952]. The court then entered the Supplemental Order, which it described as "a clarifying order," not an amendment. [ROA.7037]. That order made the clarification effective as of the date of the June Vesting Order and

expressly invoked both Code § 349(b) and § 541 -- the very provisions the Bankruptcy Court disclaimed in October 2025. The record thus confirms that the Bankruptcy Court intended the June Vesting Order to convey the FSS Assets to the Jones Chapter 7 Estate at dismissal, and that the Supplemental Order simply confirmed what had always been intended.

Two statements are particularly helpful in nailing down the intent of the bankruptcy court demonstrating there was nothing "contingent" or "conditional" in bankruptcy court's intentions"

> **THE COURT: That was always the intent. Right?** ... **But I'm just saying that was always the intent. Everybody knew**. ..**I'm more than happy to clarify in my order that all the assets -- if it didn't include it in the assets, that's why he has the cash, right**? ... He's got everything. **That was always the intent as to what was going on**...**I just think we're getting in the technicalities here. But that certainly was what I ordered at the time**. [p.24]
>
> *****
>
> **THE COURT**: Mr. Wolfshohl [*BK Trustee counsel*], what about that?... **I'm going to give you [*i.e., the BK Trustee*] all the assets of FSS. I'm going to clarify that that's what you [i.*e. the BK Trustee*] always had, the assets of FSS. And I just want to make sure that other people look at it so that no one then -- I sign something and then somebody comes in and asks me to reamend the order**... [p.26–27]

ROA.950, 952-53. The second statement was made by counsel for the US Trustee, Mr. Nguyen, and it confirms that an unconditional §349 conveyance was intended and satisfied the objection of the US Trustee:[12]

> MR. NGUYEN: Your Honor, if you clarify the order to include all of FSS hard assets as property of the estate, the U.S. Trustee won't have any objection. I think you are able -- you have discretion under 349 to order otherwise. As long as that order is clear, we're fine with that.

ROA.952. Reading the Supplemental Order in this fashion is in harmony with the bankruptcy court's statements at the September 2024 hearing which gave birth to the Supplemental Order.

### 3. *THE COURT'S GRANT OF OPERATING AUTHORITY REFUTES ANY SUGGESTION OF NO TRANSFER OR OF A TRANSFER SOLELY THAT FSS ASSETS COULD BE SOLD*

Suggestions have been made that not only was there no real conveyance but that the purpose of the Supplemental Order was only to facilitate a sale. While a sale of FSS assets may have motivated the court, nothing in the Supplemental Order links its validity or term to a sale. To the contrary, the second sentence of the Supplemental Order separately granted the Trustee permission to "operate the business" for a year [ROA.7037]:

[12] ROA.927.

> 2. The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.

Section 721 reads as follows:

> **§ 721. Authorization to operate business**
>
> The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate.

This is not a re-vesting or claw-back statute and it is not linked to §349. It would make no sense to grant the BK Trustee operational prerogatives for a fictious type of holding arrangement. And granting those prerogatives for an entire year demonstrates this was no short-term arrangement. Moreover, nothing in the text creates any mechanism for retroactively returning assets to FSS, particularly months later, and particularly when the Supplemental Order had become final and non-appealable. Also notable, while FSS technically continued to be run by Jones as is sole manager subject to the oversight of the BK Trustee, after one year, the BK Trustee lost that oversight as it was never extended, meaning that since September 2025, FSS was solely operated by Jones, although he kept the BK Trustee fully informed.

## B. No Statements Made At the February 2025 Hearing Could Or Did Change The Supplemental Order While Appeal Was Pending

Nothing the bankruptcy court said or did at the hearing in February 2025 could or did reflect a decision to return FSS assets to FSS.

First, as to whether the bankruptcy court declared the Supplemental Order void, that is not what was said. Rather the court any future use was null and void:

> No, you don't have to say anything. I know what the rights are. And I'm not -- so you can consider any use of the supplemental order null and void, because the purpose for which it served was the auction of the assets, and we're not doing that anymore. I don't trust the process. I would have to do it -- me, myself -- and I'm not overseeing it.

ROA.3375. And as stated *supra*, this was said in frustration at the conduct of the BK Trustee. In fact, at a hearing in June, 2025, the court explained what it was attempting to do in February [ROA.6555]

> What I intended to say and certainly communicate to the parties is conducting -- well, I can't, I'm not going to force the trustee to put up another sale, put on auction. The trustee can exercise business judgment, but here are the matters, here are the things the trustee needs to think about before we bring another motion for the sale of the assets. And here's a laundry list of issues that I've got.

So the bankruptcy court did not "negate" the Supplemental Order. Additionally, at the June 2025 hearing, the bankruptcy court itself not only said it had lost jurisdiction to change the Supplemental Order in February 2025 but made clear that it was considering the terms on which a future sale could occur-- a physical impossibility if the Supplemental Order regarding §349 vesting of FSS assets in the Jones BK Estate had suddenly evaporated in February 2025 [ROA.6555].

But the Bankruptcy Court could not have negated or voided the Supplemental Order even had it wanted to. It is undisputed that the Texas Plaintiffs had appealed the Supplemental Order in October 2024, shortly after its entry. [ROA.7612]. As the US Supreme Court has explained, the "filing of a notice appeal is an event of jurisdictional significance." *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982). Such an appeal confers exclusive jurisdiction on the appellate court while divesting the lower court "of its control over those aspects of the case involved in the appeal." *Id*. Thus, alterations of any kind were precluded by case law and FRCP 60(a), which expressly states that after appeal an order cannot be changed in any way, even to correct clerical errors.

Thus, even had the Bankruptcy Court said in February 2025 it was negating the Supplemental Order, because of the pending appeal, such statements and actions would have been unquestionably void. *In re TransTexas Gas Corp.,* 303 F.3d 571, 579 (5th Cir. 2002).

### C. After The Appeal Was Dismissed, The Supplemental Order Became A Final Nonappealable Judgment

The Texas Plaintiffs' appeal of the Supplemental Order is also significant because, once that appeal was dismissed in May 2025, the Supplemental Order became a final order that could not be collaterally attacked or changed even by the bankruptcy court itself.[13] A final order cannot be collaterally undone by later reinterpretation. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (holding that a final order is not subject to collateral attack).

While Plaintiffs/Appellees' October Motion requested relief under FRCP 60(b)(6), the Supreme Court's recent decision in *BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025) demonstrates the utter unavailability of FRCP 60(b)(6). After repeatedly emphasizing FRCP 60(b)(6) "requires extraordinary circumstances" [*Id.* at 210] and "is available only in narrow circumstances," [*Id.* at 211], the Supreme Court juxtaposed two different cases to further explain just how extraordinary the circumstances must be. *Id. at 211–12*. Here, the Texas Plaintiffs appealed the Supplemental Order and then voluntarily dismissed that appeal. That was precisely the kind of "free, calculated, deliberate choice[]" from which Rule 60(b)(6) does not provide relief. There are no extraordinary circumstances.

---

[13] The Texas Plaintiffs have acknowledged that "Plaintiffs and the Trustee voluntarily stipulated to dismiss the appeal of Supplemental Dismissal Order pursuant to FRBP 8023," and that the district court terminated the appeal in May 2025. ROA.3459.

Moreover, Rule 60(b)(6) was not available at all. Appellees' asserted ground for relief -- that the Supplemental Order was legally ineffective or had been negated by the bankruptcy court's later statements -- is, at bottom, a claim that the court made a mistake. A judge's error of law is a "mistake" under Rule 60(b)(1). *Kemp v. United States,* 596 U.S. 528, 533–35 (2022). Rule 60(b)(6) is available only when the asserted ground is not covered by Rules 60(b)(1) through (5). *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863 & n.11 (1988); *BLOM Bank*, 605 U.S. at 211–12. A Rule 60(b)(1) motion must be made "no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1); Fed. R. Bankr. P. 9024. The Supplemental Order was entered on September 25, 2024. Appellees filed their October Motion on September 26, 2025, after that year had run. Any relief from the Supplemental Order was therefore time-barred.

## D. THERE WAS NO CASE OR CONTROVERSY PENDING BEFORE THE BANKRUPTCY COURT WHEN IT ISSUED ITS OCTOBER ORDER; ADVISORY OPINIONS ARE PROHIBITED AND THE OCTOBER ORDER IS NOT A MODIFICATION NOT INTERPRETATION

Courts look to substance, not labels to determine whether a court order addressing a prior order is a permitted interpretation or a forbidden modification. The Second Circuit's reasoning in *Weight Watchers Int'l v. Luigino's, Inc*., 423 F.3d 137, 141-42 (2d Cir. 2005) is instructive:

> Whether an order interprets or modifies an injunction is determined by its actual effect. An interpretation does not change the status of the parties, while a modification alters the legal relationship between the

> parties, or substantially changes the terms and force of the injunction. We therefore consider the effect of each order and its relationship to the other.

This Court has adopted the same practical approach in *Anderson v. Hutson*, 114 F.4th 408, 415 (5th Cir. 2024). Modifications cannot be disguised as interpretation. Here, the October Order does not clarify the Vesting Orders. It reverses them, and well after the fact. That is modification, altering substantive rights and status and exceeds interpretive authority. Nor may a bankruptcy court later interpret a final order in a way that alters substantive rights. The Fifth Circuit has repeatedly held that final bankruptcy orders are binding and enforceable unless reversed on direct appeal. *In re Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993).

The October Order attempts precisely what the Supreme Court forbids: to "effectively nullify" a final order without FRCP 60 authority. That exceeds jurisdiction.

The Bankruptcy Court had already determined that vesting occurred and the BK Trustee possessed FSS Assets; §541 property existed; an auction sale was appropriate. The Supplemental Order memorialized those determinations. The October Order contradicts them. No new evidence emerged. No statutory amendment occurred. No appellate reversal intervened. The only change was a shift in judicial interpretation. That is insufficient to overcome finality.

## E. JONES AND FSS BOTH HAVE STANDING TO APPEAL.

The one and only holding of the District Court that is relevant in this appeal is its holding that neither Jones nor FSS has standing to appeal. In so holding the District Court erred.

### 1. *PLAINTIFFS/APPELLEES CANNOT FILE A MOTION SEEKING RELIEF AS TO JONES AND FSS AND THEN CLAIM JONES AND FSS CANNOT APPEAL AN ADVERSE RESULT*

Denying Appellants standing to appeal is fundamentally inconsistent with the very relief they sought below. The October Proceedings were not abstract administrative matters involving only the BK Trustee. Plaintiffs/Appellees themselves affirmatively sought relief directed at both Jones and FSS. Their October Motion expressly requested rulings concerning whether the FSS Assets were property of the Jones Estate and whether the automatic stay protected those assets from collection activity. In doing so, Plaintiffs/Appellees named both Jones and FSS—not merely the BK Trustee[14]—as the parties against whom relief was sought. Jones and FSS both appeared and responded to the motion. ROA.006417. At the October 1, 2025 hearing, undersigned counsel appeared on behalf of both Jones and FSS. ROA.006797. The Bankruptcy Court then entered the October Order directly, albeit incorrectly, adjudicating the rights and interests of Jones and FSS with respect to the FSS Assets, the automatic stay, and the scope of the Jones Estate.

---

[14] Appellees claimed certain positions for the BK Trustee, but provided no record cites.

Having affirmatively invoked the Bankruptcy Court's jurisdiction to obtain relief against Jones and FSS, it is untenable that neither Jones nor FSS may appeal the adverse order Plaintiffs/Appellees themselves procured. In fact, it is nonsensical. Plaintiffs/Appellees cannot: (a) file a motion seeking substantive relief against Jones and FSS; (b) obtain an order adjudicating Jones's and FSS's rights and interests; (c) use that order offensively against Jones and FSS in Texas state court; and then (d) argue that Jones and FSS lack standing to challenge the very order entered against them.

The Fifth Circuit's "person aggrieved" standard does not permit such gamesmanship. An appellant has standing where a bankruptcy order "diminished its property, increased its burdens or impaired its rights." *In re Cajun Elec. Power Coop.*, 69 F.3d 746, 749 (5th Cir. 1995). The October Order plainly did so. It declared that the FSS Assets were not property of the Jones estate, eliminated asserted automatic-stay protections, authorized collection efforts outside the bankruptcy process, and stripped away the estate-related treatment previously afforded those assets under the Supplemental Order. Plaintiffs/Appellees themselves are actively relying upon the October Order in Texas state court against Jones and FSS and contesting the use by Jones/FSS of the Supplemental Order. It is untenable and a denial of due process to simultaneously claim that the October Order has operative legal consequences against Jones and FSS while arguing that those same

parties are insufficiently affected to appeal it. The October Order therefore directly affected Jones's legal and pecuniary interests, making him a proper appellant under settled Fifth Circuit law and FSS as it is directed at what assets it owns or does not own.

2. *JONES'S DISCHARGE HAS NOT BEEN DETERMINED AND UNDER THIS COURT'S HOLDING IN MANDEL, JONES THUS HAS STANDING*

In *Mandel v. Mastrogiovanni Schorsch & Mersky (In re Mandel)*, 641 Fed. Appx. 400, 404 (5th Cir. 2016) this Court held that the fact that a debtor could receive a discharge gives them a direct pecuniary interest sufficient to allow standing. The District Court found that the Connecticut judgment is "final and mostly nondischargeable." [Op. 9 (*citing In re Jones*, 655 B.R. 884, 902–03 (Bankr. S.D. Tex. 2023))]. Appellees contend that those debts, and the Texas Plaintiffs' judgment, are excepted from discharge. The Bankruptcy Court has granted partial summary judgment on nondischargeability, but it has entered no final judgment. *See Lafferty v. Jones* (*In re Jones*), Adv. No. 23-03037 (Bankr. S.D. Tex.); *Heslin v. Jones* (*In re Jones*), Adv. No. 23-03035 (Bankr. S.D. Tex.).

As in *Mandel*, then, the debts at issue have not been discharged and "may not be discharged," and to the extent they are not, they will follow Jones out of bankruptcy. Every dollar the FSS Assets produce for those creditors is a dollar Jones will not personally owe. Every dollar lost to a depressed or collusive disposition is a dollar he will. For a debtor burdened with nondischargeable debt, the estate's value

is not an abstraction reserved for creditors. It is a direct and measurable reduction of his own liability. This Court has recognized precisely this exception to the general rule.

In *Mandel*, as here, the district court dismissed a Chapter 7 debtor's appeal on the ground that he lacked a sufficient interest to establish standing. 641 F. App'x at 402. This Court agreed that, once Chapter 7 proceedings begin, the debtor "typically has no concrete interest in how the bankruptcy court divides up the estate." *Id.* at 402–03. But it reversed, holding the debtor was a person aggrieved because the debt at issue "may not be discharged, thus exposing him to personal liability for the balance." *Id.* at 403. The Court explained that "[c]ourts have generally held that '[a] Chapter 7 debtor qualifies as a "person aggrieved" for purposes of appellate standing . . . if he can demonstrate that defeat of the order on appeal . . . would affect his bankruptcy discharge.'" *Id.* (*quoting In re Beaulac*, 294 B.R. 815, 821 (B.A.P. 1st Cir. 2003) (per curiam)).

*Mandel* involved an order allowing a claim, which fixed the amount of the surviving debt directly. The principle, however, is not limited to claim-allowance orders. The question under *Mandel* is whether the order on appeal affects the debtor's exposure to personal liability on debts that will survive the bankruptcy. Here, the district court's own findings establish that Jones faces that exposure on a scale few debtors ever will. The District Court cited *Foster*, an unpublished decision applying

the general rule to a debtor who made no showing of nondischargeable debt, [Op. 9], but it did not address the nondischargeability exception that *Mandel* recognizes.

The District Court treated the size of the nondischargeable judgments as proof that Jones lacks an interest. [Op. 9]. It is the opposite. The larger the debt that survives bankruptcy, the more the method and outcome of liquidating the estate's principal operating asset matters to the debtor who will remain liable for it. Nor is that liability fixed. Since the District Court ruled, the Third Court of Appeals has modified the Texas Judgment by reducing by nearly $45 million off that jury award. *See Jones v. Heslin*, No. 03-23-00209-CV, 2026 LX 448607 (Tex. App.—Austin Aug. 21, 2026, no pet. h.) Jones's surviving liabilities remain in active litigation, and the value obtained for the FSS Assets will be applied against whatever those liabilities are ultimately determined to be.

And the October Order did change the method and outcome. On Appellants' view, the FSS Assets were to be liquidated by a Chapter 7 trustee, as a fiduciary for all creditors, through a sale process subject to bankruptcy-court approval, a process in which the Bankruptcy Court, after receiving a competing bid from a Jones affiliate, had already rejected the Trustee's proposed sale because of concerns about the auction. [Op. 4]. The October Order removed the assets from that process and left them to a state-court receivership, in which the receiver has since sought approval of an agreement giving an affiliate of the same bidder the right to use the

InfoWars marks and trade names. [Op. 8]. Whether the FSS Assets are sold in a supervised, competitive bankruptcy sale or disposed of by a receiver appointed at the request of the judgment creditors themselves is a difference measured in dollars that will be applied to, or left owing on, Jones's surviving debts. That injury flows from the October Order itself, which is the order that released the assets from the bankruptcy process.

### 3. *FSS Surely Has Standing As The Ownership Of Its Assets Is Squarely At Issue*

The issue squarely raised by the status of the Vesting Orders is ownership and control of FSS assets. That alone suffices. The District Court held that FSS is "in substance, the prevailing party" because the October Order "allow[ed] it to exercise control over property to which it has legal title," and it observed that it was "not aware of a case in which an entity has successfully argued that it has standing to appeal an order awarding it money or property." [(Op. 13 & n.3)]. But the October Order did not award FSS anything. It in fact denied FSS the relief it sought and granted the relief Plaintiffs/Appellees sought. Its only operative effect was to expose FSS's property to Plaintiffs/Appellees' collection efforts. An order that clears the way for creditors to seize a party's property does not become a victory for that party because it is phrased as a confirmation of the party's title.

Accepting the District Court's holding that a "prevailing party" lacks standing to appeal is not in keeping with this Court's prior authority determining that a

prevailing party has standing to appeal if he can demonstrate that he was aggrieved by a favorable judgment. *See United States v. Fletcher*, 805 F.3d 596, 602 (5th Cir. 2015) ("Courts have recognized a handful of situations in which a party may be sufficiently aggrieved by a favorable judgment to appeal it, such as where the judgment itself contains prejudicial language on issues immaterial to the disposition of the case, where collateral estoppel may harm the party in future proceedings, or where the party will suffer financial loss as a result of the judgment."….Similarly, courts have permitted prevailing parties to appeal unfavorable findings that may have an adverse future effect."). If property at issue were a contaminated waste dump that a party did not want, one would hardly say they "prevailed" if it were deemed the owner. To the contrary the determination of prevailing party means one got what one sought.

4. *In re Cajun Elec. Power Co-op., Inc., 69 F.3d 746, 749 (5th Cir. 1995) Definitively Establishes Standing For Jones and FSS*

What is at issue here is both ownership and control of FSS assets, not the proceeds of their sale or whether those proceeds will satisfy Plaintiffs/Appellees unlawful, unconstitutional Connecticut judgment which they claim is so large, that Jones is hopelessly insolvent and cannot pay. Plaintiffs/Appellees thus attempt to reduce the standing inquiry to a single question of whether Jones can ultimately receive a surplus distribution after liquidation. The law in this circuit is broader than

that, however. Where ownership and control of assets is the issue, this Court has plainly stated that is enough to confer bankruptcy standing.

In *In re Solomon* footnote 10 of that case, for the test for bankruptcy standing is:

> "To have standing to appeal a bankruptcy order, a debtor must show that he was directly or adversely affected pecuniarily by the order, or that the order diminished his property, increased his burdens, or impaired his rights. *Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co., Inc. (In re Cajun Elec. Power Coop., Inc.),* 69 F.3d 746, 748 (5th Cir. 1995)..."

That standard squarely establishes standing here. Turning to the *Cajun* case, there the debtor utility owed approximately $1.6 billion to the Rural Utilities Service ("RUS"), a federal creditor. After the Louisiana Public Service Commission ordered Cajun to lower its rates, Cajun became unable to satisfy its massive debt obligations and filed Chapter 11 bankruptcy. RUS and other creditors then sought appointment of a trustee. The creditors argued Cajun lacked standing to appeal because it was "hopelessly insolvent." The Fifth Circuit expressly rejected that argument as "without merit." *Cajun Elec.*, 69 F.3d at 749. Critically, this Court held that Cajun had standing because the appointment of a trustee deprived Cajun of "all the rights it had as a debtor-in-possession, including the right to operate its business." *Id.* The court concluded: "Clearly, it was aggrieved by losing the right to run itself." *Id.* Notably, it is undisputed Jones is the unquestioned Manager of FSS; and the Supplemental Order not only protected FSS assets, but it also gave the BK Trustee

one year to operate those assets, before operational control reverted to Jones as the Manager.

Like the debtor in *Cajun Electric*, Jones and FSS challenge an order stripping away protection, control and administration over business assets. The October Order declared that the FSS Assets were not property of the Jones estate, removed asserted bankruptcy protections from those assets, authorized outside collection efforts, and effectively displaced the prior estate-based administration established by the Supplemental Order. Those consequences directly impaired Jones's and FSS's rights concerning ownership, control, administration, and disposition of the FSS Assets and insured that a state "constable sale" would occur instead of a sale supervised by a United States bankruptcy court.

Importantly, *Cajun Electric* demonstrates that standing does not disappear merely because creditors contend the debtor is "hopelessly insolvent" or because a surplus distribution may ultimately be unlikely. Instead, this Court recognized that impairment of control and property rights itself creates standing. This principle is especially applicable here because the October Proceedings directly concerned the ownership status of the FSS assets. Plaintiffs/Appellees' motion was framed broadly as a request for relief from the Supplemental Order—the very order that confirmed the FSS Assets were deemed "vested" in the Jones bankruptcy estate pursuant to 11 U.S.C. §349 and subject to administration through the Jones estate.

Plaintiffs/Appellees sought to undo that prior ruling and obtain a contrary adjudication regarding ownership and estate status of the FSS Assets.

The ownership/control issue could not be more central to Jones and FSS. Jones was indisputably the sole member and sole manager of FSS. The Supplemental Order directly addressed the status and administration of FSS Assets within the Jones bankruptcy estate. Plaintiffs/Appellees then sought relief overturning that framework. At a minimum, the October Motion functioned as a de facto request for declaratory relief directed at Jones and FSS concerning ownership and control of the FSS Assets.

Moreover, *In re Lopez* confirms the significance of the Supplemental Order's vesting language. This Court explained that "vest" means:

> "to confer ownership of property on a person; to invest a person with the full title to property; or to give a person an immediate, fixed right of present or future enjoyment." *Id.* (cleaned up).

Thus, the October Proceedings did not involve some abstract or collateral dispute. They directly targeted the legal status, ownership, and administration of the FSS Assets previously vested in the Jones estate. This case therefore differs fundamentally from cases involving only disputes over distributions from already-liquidated assets or speculative claims to downstream sale proceeds. Jones and FSS are not attempting to assert rights belonging to third parties or merely disputing allocation of sale proceeds in which they possess no direct interest. Rather, they

challenge an order adjudicating ownership and control over assets themselves—assets that had not yet been liquidated and that previously had been treated as property of the Jones estate.

5. *JONES'S STATUS AS A MEMBER OF FSS DOES NOT DEFEAT HIS STANDING*.

Finally, the District Court's reliance on Texas Business Organizations Code § 101.106(b) conflated the merits with standing. The Texas Supreme Court's decision in *Pike v. Texas EMC Management, LLC*, 610 S.W.3d 763 (Tex. 2020), illustrates the error, and it does so on the very Texas-law principle the District Court invoked.

The District Court held that Jones lacks standing "specifically, because he has no property rights to Free Speech Systems's assets," relying on Texas Business Organizations Code § 101.106(b), which provides that an LLC member "does not have an interest in any specific property of the company." [Op. 10]. In *Pike*, the defendant made the same argument that a partner lacked "standing" because Texas law vests claims for injury to the entity in the entity. 610 S.W.3d at 775–76. The Texas Supreme Court rejected the argument. Drawing on *Franchise Tax Board of California v. Alcan Aluminium Ltd*., 493 U.S. 331, 336 (1990), and this Court's decision in *Ensley v. Cody Resources, Inc*., 171 F.3d 315, 319–20 (5th Cir. 1999), it held that the statutory rules separating an organization's property and claims from its owners' "go to the merits of the claim; they do not strip a court of subject-matter jurisdiction." 610 S.W.3d at 778. The court warned against "conflat[ing] the standing

requirement that [the plaintiff] suffer a personal injury with his ability or inability to recover" for an injury "arguably incurred by a different entity." *Id.* at 776 n.10 (quoting *Lake v. Cravens*, 488 S.W.3d 867, 888 (Tex. App.—Fort Worth 2016, no pet.)).

*Pike* does not define federal appellate standing, and Appellants do not suggest that it does. But it confirms, as a matter of the Texas law on which the District Court relied, that § 101.106(b) and the entity-separateness rules it codifies are rules about what an owner may ultimately recover. They are not rules about whether an owner is affected. Section 101.106(b) says nothing about the effect of a final federal order directing that an LLC's property "shall be deemed to have vested in the bankruptcy estate" of its sole member "as property of that estate pursuant to Section 541." [ROA.6938]. Whether that order meant what it said is the merits question.

Accordingly, the District Court's determination that Appellants lacked standing to pursue an appeal of the October Order was made in error.

## VII.
## CONCLUSION AND PRAYER

The district court erred in holding that Appellants lack standing to appeal the October 1 Order, and the bankruptcy court erred in declaring that the FSS Assets are not property of the Jones bankruptcy estate and are not protected by the automatic stay. Appellants therefore respectfully request that this Court:

1. Reverse the district court's May 15, 2026 judgment dismissing Appellants' appeal, and hold that Jones and FSS are persons aggrieved by the October 1 Order;

2. Reverse the bankruptcy court's October 1 Order; render judgment that, under the Supplemental Order, the FSS Assets are property of the Jones bankruptcy estate and are protected by the automatic stay under 11 U.S.C. § 362(a); and remand to the bankruptcy court for further proceedings consistent with that judgment;

3. In the alternative, remand to the district court with instructions to decide the merits of Appellants' appeal of the October 1 Order; and

4. Grant Appellants all other relief, at law or in equity, to which they may be justly entitled.

Dated: October 16, 2026

Respectfully submitted,

Shelby A. Jordan
Texas Bar No. 11016700
Antonio Ortiz
Texas Bar No. 24074839
**JORDAN & ORTIZ, PC.**
500 N. Shoreline Blvd., Suite 804
Corpus Christi, Texas, 78401
Phone: (361) 884-5678
Fax: (361) 888-5555
Email: sjordan@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**ATTORNEYS FOR APPELLANTS**

*/s/ Ben C Broocks*
Ben C Broocks
State Bar No. 03058800
William A. Broocks
State Bar No. 24107577
BROOCKS LAW FIRM P.L.L.C.
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
**CO-COUNSEL FOR APPELLANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, a true and correct copy of the foregoing document was sent via electronic mail to all counsel and parties listed on the Court's ECF filing system.

*/s/ Ben C Broocks*
Ben C Broocks

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) this document contains 12,847 number of words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, font size 14.

*/s/ Ben C Broocks*
Ben C Broocks